UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20348-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

TAVARIS Z. RUSSELL,

    Defendant.
_____/

## ORDER ON
## DEFENDANT'S MOTIONS TO COMPEL PRODUCTION OF EVIDENCE

This matter is before the Court on Tavaris Z. Russell's ("Defendant" or "Mr. Russell") two Motions to compel production of evidence. First, Defendant moves this Court for an order compelling the production of exculpating evidence under *Brady*. [D.E. 44]. In addition, Defendant moves for an order compelling the production of his cellphone pursuant to Federal Rule of Criminal Procedure 16. [D.E. 45]. The Unites States of America (the "Government") filed a Response in Opposition to both Motions on October 24, 2022, [D.E. 49], to which Defendant did not reply. Therefore, the Motions were referred and are now ripe for disposition. [D.E. 47]. After careful consideration of the Motions, the record, the relevant authorities, and for the reasons discussed below, Defendants' Motions are **DENIED**.

## I. BACKGROUND

Mr. Russell was arrested on July 25, 2022, for his alleged involvement in the trafficking of two adults and one minor for the purposes of commercial sex. On August 3, 2022, a Grand Jury sitting in the Southern District of Florida returned a five-count indictment charging Defendant with sex trafficking by force, fraud, and coercion, in violations of 18 U.S.C.§ 1591 (Counts 1, 2, and 3); production of child pornography, in violations on 18 U.S.C. § 2251 (Count 4); and use of a facility in interstate commerce in aid of a racketeering enterprise, in breach of 18 U.S.C. § 1952 (Count 5). [D.E 11].

Now before the Court are Defendant's two motions seeking and order compelling the Government to produce certain evidence. Specifically, Defendant moves to compel production of his cellular telephone for inspection, [D.E. 45], as well as for the production of alleged *Brady* materials. [D.E. 44]. As we explain below, Defendant's motions lack merit.

## II. APPLICABLE PRINCIPLES AND LAW

### A. *Federal Rule of Criminal Procedure 16*

Rule 16 is the primary rule governing pretrial discovery in criminal cases, and it "spells out the materials the prosecution must produce on the defendant's request." *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). In pertinent part, Rule 16(a)(1)(E) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" a whole array of tangible objects, provided that the items are "within the government's possession, custody, or control

2

and: . . . (iii) the item was obtained from or belonged to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

### B. *Due Process Discovery Obligations*

In addition to the discovery obligations embodied by Rule 16, a criminal defendant's due process rights obligate the prosecution to disclose information that is favorable to the defendant and that is material either to guilt or to punishment. *Brady v. Maryland*, 83 S. Ct. 1194 (1963). For the Government's *Brady* obligations to apply, the information at question must be in the knowing possession (actual or constructive) of the Government, and such information must be material to exculpating the defendant.

The Government is only required to disclose exculpatory materials to the defense "[i]f [the] federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady*." *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir.1989). *See also United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.1999) ("The prosecution must only reveal information that it had in its possession or knowledge—whether actual or constructive."). The Eleventh Circuit has observed that while knowledge or possession by the prosecutor "includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor," *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003), a "prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially [exculpatory information] every time a criminal defendant makes a *Brady* request[.]" *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002). *See also United States v. Trevino*,

556 F.2d 1265, 1272 (5th Cir. 1977) (holding that the Government is not in possession when "neither the prosecutor nor any governmental unit aligned with him in the prosecution can have possession of or access to [the exculpatory evidence]"); *United States v. Auten,* 632 F.2d 478, 480 (5th Cir.1980) (holding that the prosecution is deemed to have knowledge of criminal information of its witnesses that would be revealed by a routine check of FBI and state crime databases, including a witness' state "rap sheet."); *United States v. Flores*, 540 F.2d 432, 437 (9th Cir.1976) (noting that the Government is under no obligation to sift through public records to which the defense has equal access); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir.1993) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant.").

Favorable evidence for *Brady* purposes includes both exculpatory and impeachment evidence. *See Giglio v. United States*, 92 S. Ct. 763 (1972); *Jordan*, 316 F.3d at 1253. But mere "favorableness" to the defendant is not enough to qualify for *Brady* protections—the information must also be material. Evidence "is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993). Therefore, a "defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files," *Pennsylvania v. Ritchie*, 107 S. Ct. 989, 1002 (1987), nor does the right require the

4

prosecution to deliver its entire file to the defense. *United States v. Agurs*, 96 S. Ct. 2392, 2400 (1976).

Furthermore, in adjudicating unspecific *Brady* requests, courts generally accepted federal prosecutors' good faith averments that the information they have is not exculpatory, that certain exculpatory evidence is not in their possession, or that the alleged exculpatory evidence has been produced. *See Archer v. United States*, 393 F.2d 124, 126 (5th Cir. 1968) (no obligation to disclose where "the government makes the flat statement in brief that there is no such evidence within the possession or knowledge of the of the United States Attorney's Office or the [FBI]."). Indeed, as the Eleventh Circuit has previously explained:

> Where, as here, the defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed. *Ritchie*, 480 U.S. at 59, 107 S.Ct. at 1002 (footnote omitted). "Unless the defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id*. If the defendant is aware of specific information contained in the government's file, "he is free to request it directly from the court, and argue in favor of its materiality." *Id*. However, mere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove "materiality." *See, e.g., United States v. Ramos*, 27 F.3d 65, 71 (3d Cir.1994) (mere speculation that agents' rough notes contained *Brady* evidence insufficient); *United States v. Williams–Davis*, 90 F.3d 490, 513 (D.C.Cir.1996); *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir.1986). The defendant must show that there is a reasonable probability the evidence could affect the outcome of the trial. *See Baxter v. Thomas*, 45 F.3d 1501, 1507 (11th Cir.1995).
>
> Additionally, we observe that a general request for "all" *Brady* material, . . . does not help the prosecutor determine which information in the government's possession might constitute *Brady* evidence. Combined with the fact that "the significance of an item of evidence can seldom be predicted accurately until the entire record is complete," *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2399, a general request for all *Brady* evidence places

5

an onerous, if not impossible, burden on the prosecutor to identify correctly all "material" items.

*Jordan*, 316 F.3d at 1254 n.81.

### III.   ANALYSIS

Defendant's motions are denied. First, as to Defendant's motion for production of his cellphone, the Government's response—which went undisputed by Defendant—asserts that it has already produced a copy of Defendant's cellphone for his inspection. So Defendant's request is moot. Second, the Government's response to Mr. Russell's generalized *Brady* request states in good faith that the Government has fully complied with its *Brady* obligations because it has already produced all applicable materials, or because the requested materials are not yet discoverable, or do not exist. We agree with the Government on both counts.

### A.   *Motion to Compel Production of Cellphone*

We first address Defendant's motion to compel production of his cellphone. [D.E. 45]. In his motion, Defendant demands return of the cellphone that was seized during his arrest because "it has information of probative value that is needed for [Mr. Russell's] defense of his charges in the instant case." *Id.* The Government does not dispute that Defendant is entitled to disclosure of this information, nor could the Government in good faith challenge this request in light of the plain text of Rule 16(a)(1)(E) requiring this discovery. Rather, the Government argues that Defendant's request should be denied as moot because the Government has already produced copies of the complete contents of Defendant's cellphone and Instagram account to his counsel.

6

Indeed, the Government notes that it has sent two different USB drives to Defendant's counsel containing full copies of the cellphone's contents. [D.E. 49 at 2–3]. The last one of these USBs was sent on October 14, 2022, after which "[t]he government wrote to defense to confirm whether it received and was able to open this duplicative USB, but has not received a response as of this writing." *Id.* at 3. Assuming that the USB drives that the Government sent to Defendant were working properly and were readily accessible by Defendant, we take the Government's uncontested averments of compliance with its discovery obligations at face value. *See United States v. Thomas*, 548 F. Supp. 3d 1212, 1216 (M.D. Fla. 2021) (Rule 16(a)(1)(E) "not at issue because the Government has made all items seized from [defendant] available for inspection."); *United States v. Crable*, No. 16-40101-01-DDC, 2018 WL 4637269, at *3 (D. Kan. Sept. 27, 2018) (Government complied with Rule 16 by providing to Defendant cellphone extractions in CD format); *United States v. Cobb*, 544 F. Supp. 3d 310, 341–42 (W.D.N.Y. 2021) ("Where the Government makes good faith representations that it is complying with Rule 16, and that it will continue to do so, courts in this Circuit deny specific discovery requests."). Accordingly, Defendant's motion on this score is DENIED as moot.

### B. *Defendant's Motion to Compel Brady Materials*

Defendant next moves for an order compelling the Government to disclose exculpatory evidence pursuant to *Brady* and its progeny. [D.E. 44 at 1]. Specifically, Defendant seeks:

> [P]roduction of any bodycam footage or any other known video footage of the alleged victims and witnesses against him . . . . [P]roduction of any recorded statements, either written or on video, given by the alleged

7

> victims and witnesses against the Defendant . . . . [P]roduction of complete and accurate criminal records of the alleged victims and witnesses against the Defendant in the instant case, involving prostitution or any other criminal activities . . . . [P]roduction of any information the alleged victims and witnesses against the Defendant in the instant case gave at the time of their arrests relative to working for any third parties. . . . [P]roduction of any information relative to what benefits the alleged victims and witnesses in the instant case are receiving from the United States government in exchange for testifying against the Defendant. . . . [And] production of any testimony of the alleged victims and witnesses presented at grand jury proceedings against the Defendant in the instant case.

[D.E. 44 at 1–2].

Defendant alleges that "[a]t this time, there is a substantial amount of evidence that has not been provided to the Defendant pursuant to the Court's Standing Discovery Order and Brady[.]" *Id.* at 1. Yet, his three-page-long motion is devoid of any specific discussion regarding the purported deficiencies in the Government's prior two productions, or the particular circumstances that support his speculative suggestion that the Government is withholding *Brady* materials. Therefore, we treat Defendant's requests as generalized and speculative *Brady* requests that fail to overcome the Government's good faith assertions that all *Brady* materials have been produced at this point. *See Jordan*, 316 F.3d at 1254 n.81; *United States v. Warner*, No. 1:13-CR-0139-CAP, 2014 WL 1373634, at *4 (N.D. Ga. Apr. 8, 2014), aff'd, 638 F. App'x 961 (11th Cir. 2016) ("[Defendant's] requests amounted to nothing more than 'mere speculation,' which cannot overcome the government's assertion that all *Brady* material had been produced.").

We do pause, however, to clarify the interplay between the Government's discovery obligations under *Brady*, on the one hand, and *Giglio* and the Jencks Act,

8

on the other. On this score, the Government's response is a little murky, for it seems to categorically label several of Defendant's requests as "impeachment materials and witness statements which are only discoverable . . . under Giglio v. United States" or "the Jenks Act" and therefore, can be properly withheld until closer to the time of the witness' testimony. [D.E. 49 at 4]. We find this statement unhelpful and potentially inaccurate.

We note that a categorical labeling of witness statements as Jencks Act materials could be misleading because even witness statements can come into the realm of *Brady* disclosure if they "materially favor the defense," and when such an overlap takes place, the Government's obligations under *Brady* must trump the disclosure limitations prescribed by the Jencks Act. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1256 (D.N.M. 2008) ("Jencks Act statements that also constitute *Brady* material should thus be disclosed according to the *Brady*."); *United States v. Jacobs*, 650 F. Supp. 2d 160, 168 (D. Conn. 2009) ("remind[ing] the government that its *Brady* obligations trump the Jencks Act."); *United States v. McVeigh*, 923 F. Supp. 1310, 1315 (D. Colo. 1996) ("This court is persuaded by the reasoning of the courts holding that *Brady* obligations are not altered or modified by the fact that the information is contained in witness statements or grand jury testimony.") (citation omitted); *see also Jordan*, 316 F.3d at 1256 (noting that irrespective of Jencks Act, witness statements that constitute exculpatory material are covered by *Brady*); *United States v. Aiken*, 76 F. Supp. 2d 1339, 1343 (S.D. Fla. 1999) (observing that "there is no authority requiring the Government to supply . . . witness statements

until that witness has testified . . . , **unless** such information is required sooner by *Brady* or *Giglio*.") (emphasis added).

On the other hand, we agree with the Government's view that the timing requirements that apply to the disclosure of "pure" *Giglio* materials (*i.e.*, purely impeachment related evidence) are not set in stone, and that as long as Defendant is afforded enough time to use the materials effectively at trial, "there is no violation of [his] rights from deferring production of this material until closer to the time of the witnesses' testimony." *Aiken*, 76 F. Supp. 2d at 1344–45 (ordering pure impeachment materials, including "records of conviction, plea agreements, immunity agreements and the like" to be "produced no less than 10 business days in advance of trial."); *see also Lujan*, 530 F. Supp. 2d at 1255–56 (unlike exculpatory materials which "usually require significant pretrial investigation to be useful to a defendant at trial," pure *Giglio* impeachment evidence "does not require substantial time to prepare for its effective use at trial.").

With these clarifying remarks in mind, we find that Defendant's generic motion does nothing to overcome the Government's representations of full, and ongoing, compliance with its discovery obligations pursuant to this Court's discovery order and *Brady*. In its response to Defendant's motion, the Government asserts that it has made certain advance disclosures of *Giglio* and Jencks Act materials in response to Defendant's first and second requests, and it indicates that complete witness statements will be provided in due course at a closer time to trial. [D.E. 49

10

at 5].[1]  Likewise, the Government represents that it has produced the criminal records of the two alleged adult victims, and that a background search on the alleged minor victim did not yield any results.  *Id.*[2]  In his motion, Defendant specifically requests "complete" and "accurate" criminal records, but does not provide any color as to why or how the already produced records fall short of being complete or accurate. Hence, nothing in this vague and unspecific request casts doubts upon the Government's more specific statement of compliance.

Finally, we understand that the Government does not currently possess any other materials responsive to items three to six of Defendant's request, but that it will continue to live up to its ongoing *Brady* obligations to disclose should any of these materials become available, including any bodycam footage capturing police encounters with the alleged victims.  [D.E. 49 at 5–6].

In sum, the Government has provided specific responses to all of Defendant's requests, wherein it represents that it is in full compliance with its Rule 16 and *Brady* discovery obligations.  Defendant does not dispute any of these representations, and his generic and unspecific motion does not provide us with a valid basis to double guess the Government's good faith assertions of compliance with all required

---

[1] We assume, consistent with our clarifying remarks above, that by *Giglio* and Jencks Act materials the Government is referring to pure impeachment materials and witness statements that do not fall under *Brady*'s definition of material, exculpating evidence.  If that understanding is incorrect, the Government shall address that discrepancy forthwith and file a supplemental response.

[2] Here, too, we assume that the Government's search "include[d] materials in the hands of a governmental investigatory agency closely connected to the prosecutor," *Jordan*, 316 F.3d at 1249, and any governmental unit aligned with him in the prosecution. *Trevino*, 556 F.2d at 1272.

disclosures at this point. *See Jordan*, 316 F.3d at 1252 n.81 ("mere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality.'") (citation omitted); *see also Jacobs*, 650 F. Supp. 2d at 166–67 ("I see no reason to order the government to produce broad, speculative categories of information which may not exist[.]"); *Warner*, 2014 WL 1373634 at *4 ("[Defendant's] requests amounted to nothing more than 'mere speculation,' which cannot overcome the government's assertion that all *Brady* material had been produced."). Accordingly, Defendant's motion on this point is also DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motions to compel the Government to produce the cellphone for inspection, as well as additional *Brady* evidence, [D.E. 44] [D.E. 45], are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of December, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge